IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A.L.M.,[1]

        Plaintiff,

v.                                          Case No. 20-1012-JWB

ANDREW SAUL,
*Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 13, 16, 17.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I.  Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he or she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id*.; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

### II.  Background and Procedural History

Plaintiff protectively filed applications for Title II disability benefits and Title XVI supplemental security income on March 14, 2017. She alleged an onset disability date of June 1, 2014, when she was 29 years old. Plaintiff's claims were denied by the agency both initially and upon reconsideration. She then requested an evidentiary hearing before an Administrative Law Judge (ALJ). A video hearing was conducted by ALJ Tim Stueve on November 21, 2018, with the ALJ located in Topeka and Plaintiff in Kansas City. Plaintiff testified at the hearing, as did vocational expert (VE) Janice S. Hastert. The ALJ issued a written opinion denying Plaintiff's application on April 19, 2019. (Tr. at 36.)

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity (SGA) during 2014, 2015, 2016, and 2017, but that there was a continuous twelve-month period during which Plaintiff did not engage in SGA. (*Id*. at 27.) The ALJ accordingly directed his findings to the latter period. (*Id.*) At step two, the ALJ found Plaintiff has the following severe impairments: hidradenitis suppurativa, ganglion of the right wrist, PCOS (polycystic ovary syndrome), asthma, depression, anxiety, and post-traumatic stress disorder. (*Id.*) At step three, the ALJ found that Plaintiff does not have an impairment, alone or in combination, that meets or medically equals the severity of an impairment listed in the regulations. (*Id.*)

The ALJ next found Plaintiff has the RFC to perform light work as defined in the regulations, except that she can occasionally lift twenty pounds and frequently lift or carry ten pounds; can stand or walk four hours and sit for six hours in an eight-hour workday; can occasionally climb ladders, ropes, or scaffolds; can frequently handle and occasionally finger with the dominant right upper extremity; can occasionally tolerate exposure to extreme cold, extreme heat, wetness, and humidity; and can never tolerate atmospheric conditions beyond a level found in an indoor work environment. (*Id.* at 29.) The ALJ further found Plaintiff is able to understand,

carry out, and remember simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes; can tolerate occasional interaction with supervisors and the public; and can tolerate a low level of work pressure – i.e., work not requiring multitasking, significant independent judgment, fast-paced production work, or sharing of job tasks. (*Id.*)

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a pet groomer, order taker, or supervisor. (*Id.* at 33.) Finally, at step five, the ALJ found there are job existing in significant numbers in the national economy that Plaintiff can perform, namely: inserting machine operator (DOT 208.685-018, light, SVP 2; 75,000 jobs nationally); trim attacher (DOT 692.685-230, light, SVP 2; 28,000 jobs nationally); and reducing machine operator (DOT 614.685-018, light, SVP 2; 13,000 jobs nationally). (*Id.* at 34.) The ALJ accordingly found Plaintiff was not disabled within the meaning of the Social Security Act for the period from June 1, 2014, to the date of the decision. (*Id.* at 35.)

### III. Analysis

Plaintiff's sole argument is that the ALJ erred at step three by failing to properly consider whether Plaintiff's severe impairment of hidradenitis suppurativa meets or medically equals Listing 8.06. (Doc. 13 at 6.) Plaintiff argues the evidence showed her condition meets the listing requirements, but the ALJ "provided no more than a cursory, conclusory recitation" of the listing and failed to engage in a meaningful discussion of the evidence. (*Id.* at 8-11.)

The listings in the regulations are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. If the claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."

4

*Bowen v. Yuckert,* 482 U.S. 137, 141 (1987). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530 (emphasis in original). For a claimant to show that her unlisted impairment is "equivalent" to a listed impairment, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

Hidradenitis suppurativa is one of the listed impairments for skin disorders. The requirements for this listing are "extensive skin lesions involving both axillae,[2] both inguinal areas[3] or the perineum[4] that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.06. "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation." *Id.*, § 8.00(C)(1).

> Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id.*

The ALJ expressly considered Listing 8.06. (Tr. at 27.) He also correctly cited the requirements of the listing before finding that Plaintiff's condition did not meet or medically equal

---

[2] "The cavity beneath the junction of the arm … and shoulder … containing the axillary artery and vein, a part of the brachial nerve plexus, many lymph nodes, and fat and areolar tissue: armpit." *Webster's Third New Int'l. Dictionary*, p. 152  (Merriam-Webster 1993).
[3] "[O]f, relating to, or in the region of the groin…." *Id.* at p. 1162.
[4] "[A]n area of tissue marking externally the approximate boundary of the outlet of the pelvis and as [usually] demarked giving passage to the urinogenital ducts and the rectum…." *Id.* at p. 1680.

the listing. (*Id.* at 27-28.) It is true at step three of his analysis, the ALJ did not engage in a discussion of the evidence as it applies to the requirements of Listing 8.06. Nevertheless, the ALJ's opinion shows he considered Plaintiff's skin condition at subsequent steps, addressed the relevant evidence, and made findings that support his conclusion that the listing was not satisfied. *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir. 2005) (ALJ's findings at other steps "may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.")

The ALJ noted Plaintiff's testimony that she had skin outbreaks every four to six weeks. (Tr. at 31.) He cited records indicating Plaintiff had experienced recurrent boils in the armpit and groin regions, with a left groin boil surgically excised and then causing problems in August of 2016, and a gluteal cleft abscess excised in November of 2016. (*Id.*) He noted that five months later, Plaintiff experienced a cyst on her back and another at the natal cleft but that "[t]he lesions were described as solitary and not inflamed." (*Id.*) The ALJ noted both nodules were excised and Plaintiff completed a course of antibiotics. Plaintiff reported she was laying down rather than sitting due to tenderness post-excision. (*Id.*) (citing Exh. 16F/8). The exhibit cited by the ALJ states that other than this tenderness, Plaintiff had no trouble since she finished the course of antibiotics and her stitches were removed without issue on October 4, 2017, "without surrounding erythema or fluctuance" and with "[n]o drainage." (Tr. at 676.) The ALJ noted an "unremarkable" exam on October 25, 2017, at which a pilonidal cyst was observed to be slightly tender but was the same temperature as surrounding tissue and had no open areas or drainage. (*Id.* at 605.) The ALJ also noted a topical antibiotic was effective in treating Plaintiff's groin lesions, referring to an exam at which her provider concluded her treatment regimen "appears to be working well at this time" and should be continued. (*Id.* at 31) (referring to *id.* at 630). The ALJ finally noted that

"[s]ubsequent exams were negative with no rashes, lesions, discoloration or other signs," and an exam in September of 2018 "showed only mild hidradenitis in the left lower and right lower extremity, trivial in the axillae, with no other positive findings." (*Id.* at 30.)

Listing 8.06 requires extensive skin lesions involving certain body areas that persist for at least three months despite continuing treatment. Plaintiff argues "there is no question" her condition meets the three-month requirement because her hidradenitis suppurativa was described by a provider as "recurrent," a physician noted she has had the condition "for 17 years," and the ALJ "acknowledged … that Plaintiff 'experiences skin outbreaks about every four to six weeks" and that "[r]ecords indicate recurrent boils in the groin and armpits." (Doc. 13 at 8.) But the fact that Plaintiff has had recurring lesions over a number of years does not necessarily show *lesions that persist for three months* despite treatment. *Cf. Beaty v. Colvin,* 2014 WL 1385184, at \*5 (D. Kan. Apr. 9, 2014) (although claimant developed lesions every three months that took up to a month to heal, and the condition existed for years, there was "no evidence suggesting that the lesions have persisted for at least three months.") *See also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(G) ("By persist, we mean that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level of severity specified in the listing.")

At any rate, the listing is not met unless the lesions are also extensive, meaning they must "result in a very serious limitation." *Id.*, § 8.00(C)(1). The regulations by way of example cite lesions that very seriously limit the "use of more than one extremity," the "ability to do fine and gross motor movements," or the "ability to ambulate." Plaintiff cities no evidence of such a serious limitation over a three-month period resulting from her lesions and the ALJ's findings throughout his opinion refute any such limitations. *Cf. Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) ("The ALJ's confirmed findings at steps four and five of his analysis, coupled with

7

indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three.")

Plaintiff has obviously experienced painful lesions at times, but there is simply no evidence that they have seriously limited, for a three-month period despite continuing treatment, her ability to use two or more extremities, to use her hands for fine motor movements, or her ability to walk. The ALJ found as much in discussing a different listing, where he noted the absence of any medical evidence showing an inability to ambulate effectively or to perform fine and gross movements with the upper extremities. (*See* Tr. at 27.) The ALJ elsewhere noted Plaintiff has no serious restrictions in her ability to perform routine activities of daily living such as cleaning, shopping, taking public transportation, maintaining a residence, and caring for herself; she can prepare simple meals, drive, and do activities such as laundry and vacuuming and taking care of her daughter. (*Id.* at 28, 30.) The ALJ found the ability to engage in such activities was not in itself conclusive proof that Plaintiff can engage in substantial gainful activity, but that her capacity to do so was a strong indication she retains the physical and mental capacity to perform the requisite physical and mental tasks required to work. He pointed out that no medical or psychological consultant indicated Plaintiff had met any listing. (*Id.* at 28.) The ALJ also gave partial weight to the medical opinions of agency physicians who found Plaintiff could perform light work with some limitations. (*Id.* at 32.) The ALJ gave weight to a physician's assessment that Plaintiff could sit for up to six hours in an eight-hour day, based in part on the ALJ's finding that Plaintiff's lesions affecting sitting were "relatively few and infrequent." (*Id.*) In sum, although Plaintiff's condition has resulted in pain and limitations at times, the ALJ cited substantial evidence that it had not resulted in a very serious limitation for a three-month period so as to meet or medically equal the requirements of Listing 8.06. *Cf. Zebley*, 493 U.S. at 530 ("For a claimant to show that [her] impairment matches

a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")  The court finds the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record.

### IV.  Conclusion

The decision of the Commission denying Plaintiff's application is AFFIRMED.  The clerk is directed to enter judgment in accordance with this order.

s/ John W. Broomes

JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
